[Cite as *State v. Abass*, 2017-Ohio-7034.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2016CA00200 |
| | : | |
| YUNAS A. ABASS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Massillon Municipal
                                       Court, Case No. 2016-TRC-02464




JUDGMENT:                              AFFIRMED




DATE OF JUDGMENT ENTRY:                July 31, 2017




APPEARANCES:

For Plaintiff-Appellee:                     For Defendant-Appellant:

ROBERT A. ZEDELL                            JUDITH M. KOWALSKI
Massillon Law Department                    333 Babbitt Road Suite 323
Two James Duncan Plaza                      Euclid, OH 44123
Massillon, OH 44646

*Delaney, P.J.*

{¶1}  Appellant Yunas A. Abass appeals from the October 13, 2016 Journal Entry and Order of the Massillon Municipal Court.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}  The following evidence is adduced from the transcript of appellant's court trial.  Appellee's exhibits in the record include a DVD of the traffic stop, a certified copy of appellant's prior out-of-state O.V.I. conviction, the B.M.V. 2255 form signed by appellant, the B.A.C. Datamaster test form, and the evidence ticket generated by the Datamaster.

{¶3}  This case arose on April 9, 2016 when Trooper Whitacre of the Ohio State Highway Patrol observed a vehicle traveling in excess of the posted speed limit of 45 miles per hour southbound on Everhard Road in Jackson Township, Stark County. Whitacre checked his estimate with radar and established the vehicle's speed was 57 miles per hour.

{¶4}  Whitacre performed a traffic stop and learned the vehicle was driven by appellant, the sole occupant.   The trooper requested appellant's license, vehicle registration, and proof of insurance.  Appellant responded that he lived "right there," pointing to a location across the street and Whitacre repeated his request. Appellant then rummaged in the glove compartment, allowing the vehicle to roll forward to the extent that the trooper had to step out of the way to avoid having his foot run over.

{¶5}  Whitacre noticed a strong odor of an alcoholic beverage emanating from the vehicle and then directly from appellant once he was out of the vehicle.  Appellant's eyes were bloodshot and glassy.  Whitacre asked appellant how much he had to drink that evening; appellant at first said nothing, then said "not much," and later admitted to

consuming a bottle of wine approximately one hour before the traffic stop.[1]  When asked where he was coming from, appellant said he was "just out."

{¶6}   Whitacre asked appellant to submit to a series of standardized field sobriety tests and appellant complied.  Whitacre has been trained and certified in administering these tests in compliance with N.H.T.S.A. guidelines.  Whitacre observed six out of six possible clues of impairment in appellant's eyes on the horizontal gaze nystagmus test.  On the walk and turn test, appellant failed to maintain his starting position, took steps forward, counted inconsistently, and made an improper turn.  On the one-leg stand test, appellant swayed from side to side and put his foot down and his arm out for balance.  Based upon appellant's performance on the tests, his admission to drinking, and the other clues he observed, Whitacre arrested appellant for O.V.I.

{¶7}   Whitacre recalled that appellant was unusually distraught when he was placed under arrest and seated in the rear of the patrol car.  Appellant composed himself by the time they reached the State Highway Patrol post.  Whitacre learned appellant had a prior O.V.I. conviction in Michigan which had not at first appeared on appellant's driving record.  At the post, Whitacre read the B.M.V. 2255 form to appellant, informing him of the consequences of refusal to take a chemical test.  Appellant was offered a breath test and refused.

{¶8}   Upon cross-examination, Whitacre was asked whether he offered appellant a portable breath test, or P.B.T., at the scene of the traffic stop.  Whitacre testified he did in fact offer appellant a P.B.T. but appellant became "upset" and refused to take it.

---

[1] Appellant disputes this statement and testified he did not tell the trooper he drank an entire bottle of wine.

{¶9} Appellant testified on his own behalf at trial. Appellant is a reservoir engineer who is in the area for temporary work; his wife and children live out of state. English is not his first language and he said there may have been misunderstandings in his conversation with the trooper. He said he ate dinner at Jerzee's Pub a short distance away and was stopped almost directly in front of his residence. He was extremely nervous when he spoke with the trooper because of his recent O.V.I. conviction in Michigan; he was not permitted to drink alcoholic beverages as a result of his probation on that case. Appellant said his nervousness caused him to let his foot off the brake when the vehicle rolled slightly. Appellant testified he was distraught about the arrest because he was worried about the implications of drinking on the Michigan case.

{¶10} Appellant testified he told the trooper he drank a glass of wine, not a bottle of wine. He further testified he is diabetic and has recently lost 40 pounds.

{¶11} Appellant was charged by uniform traffic ticket (U.T.T.) with one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of speeding pursuant to R.C. 4511.21(C), a minor misdemeanor. Appellant appeared at arraignment with counsel and entered pleas of not guilty. Counsel thereafter was permitted to withdraw and appellant retained new counsel. New counsel filed a motion to suppress on May 9, 2016 and a suppression hearing was scheduled for June 1, 2016.

{¶12} The record indicates that a pretrial was held on June 1, 2016, but not a suppression hearing. A "Pretrial Order" from that date notes that, e.g., appellant withdrew the motion to suppress and appellee was granted leave to amend the U.T.T. to reflect the prior O.V.I. conviction.

{¶13} On June 20, 2016, a third attorney entered a notice of appearance as defense counsel.

{¶14} On September 28, 2016, appellee amended the U.T.T. to add a violation of R.C. 4511.19(A)(2), a "refusal" O.V.I. with a prior conviction within 20 years.

{¶15} On October 13, 2016, appellant appeared with defense trial counsel and waived his right to trial by jury. The matter proceeded to court trial. Appellant moved for judgments of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence but the motions were overruled. The trial court found appellant guilty as charged and sentenced him to 10 days in the Stark County Jail and 60 days on electronically-monitored house arrest, in addition to alcohol treatment and other standard O.V.I. penalties.

{¶16} Appellant now appeals from the October 13, 2016 Journal Entry and Order of his conviction and sentence.

{¶17} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶18} "I. APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION WAS VIOLATED WHEN THE POLICE CONDUCTED AN INVESTIGATORY STOP WITHOUT PROBABLE CAUSE."

{¶19} "II. THE FINDING OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} "III.   THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING THE MOTION FOR DISMISSAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE IN THAT THE EVIDENCE PRESENTED WAS INSUFFICIENT AS A MATTER OF LAW."

{¶21} "IV.   THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS."

**ANALYSIS**

I.

{¶22} In his first assignment of error, appellant argues the traffic stop was not supported by probable cause.  Because this issue was not properly raised in the trial court via a motion to suppress, we disagree.

{¶23} Appellant argues the *de minimis* traffic violation did not justify the prolonged investigative stop resulting in the O.V.I. arrest.  As appellant acknowledges, this argument was raised in a motion to suppress which was later withdrawn.

{¶24} The record does not indicate why the suppression motion was withdrawn. Ohio Traff.R. 11(B)(2)(a) states motions to suppress must be made before trial. Appellant's argument here is premised upon the argument made in the withdrawn motion to suppress, which we cannot consider because the argument was never properly before the trial court.  We have previously stated we will not speculate as to what evidence may have been developed at a suppression hearing that never took place.  *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, ¶ 41.

{¶25} In the case of *State v. Parkinson*, 5th Dist. Stark No.1995CA00208, unreported, 1996 WL 363435 (May 20, 1996) at *3, we observed that when counsel fails

to file a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion. This reasoning is applicable to the case sub judice because based on the record, it is unclear whether appellant's argument would have been successful. *State v. Culbertson*, 5th Dist. Stark No. 2000CA00129, 2000 WL 1701230, *4 (Nov. 13, 2000). See also, *State v. Hoover*, 5th Dist. Stark No. 2001CA00138, 2001–Ohio–1964.

{¶26} We are generally reluctant to attempt to redress an appellate argument seeking to demonstrate a motion to suppress would have been granted by the trial court where such an argument essentially speculates as to evidence dehors the record. *State v. Dowding,* 5th Dist. Stark No.2014 CA 00131, 2015–Ohio–1362, ¶ 53, citing *State v. Jackson,* 5th Dist. Stark No.2005CA00198, 2006–Ohio–4453, ¶ 27. The same is true in the instant case.

{¶27} Appellant's first assignment of error is overruled.

## II., III.

{¶28} Appellant's second and third assignments of error are related and will be considered together. Appellant argues his O.V.I. conviction is against the manifest weight and sufficiency of the evidence. We disagree.

{¶29} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶30} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶31} Appellant was convicted of O.V.I. pursuant to R.C. 4511.19(A)(1)(a) and (A)(2).  Those sections state in pertinent part:

> (A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
>
> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
>
> * * * *.

(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶32} Appellant argues the trooper arrested him based upon his failure on the standardized field sobriety tests, but claims his performance on the tests may have been affected by health conditions such as diabetes. Appellant did not advise the trooper of any health conditions which would negatively affect his performance during the stop, and there is no evidence in the record of any health condition alleged by appellant other than his own testimony. Nor is there evidence of the effect of any such health condition on the field sobriety tests, other than appellant's self-serving speculation. We also note the

record is replete with evidence supporting the trooper's decision to arrest, independent of the field sobriety tests.

{¶33} Appellant further argues that his alleged admission of drinking a "bottle" of wine is belied by the video, which has technical problems including mismatched audio and video. The trial court was in the best position to evaluate the video and the credibility of the witnesses and to determine what amount appellant admitted to drinking. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶34} Appellant argues, though, that the poor quality of the videotape creates discrepancies in the evidence. We have reviewed the DVD and we agree it is of limited evidential value, but the poor quality of one piece of appellee's evidence does not render appellant's conviction against the manifest weight or sufficiency of the evidence. In *State v. Moore*, 5th Dist. Stark No. 98-CA-00324, 1999 WL 770746, at *2, the appellant "disparaged" a video, arguing it was of poor quality and did not depict appellant's actions as alleged by the state. We concluded the factfinder was given the opportunity to view the video, as well as to assess all the other testimony and evidence presented. Id. In *Moore,* as in the instant case, our review of the record leads us to conclude the trial court did not clearly lose its way, but rather, there is sufficient, competent and credible evidence in support of each of the elements of the crime charged to entitle a reasonable finder of fact to conclude appellant was guilty beyond a reasonable doubt.

{¶35} We find the trial court's verdict was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant's second and third assignments of error are overruled.

IV.

{¶36} In his final assignment of error, appellant argues he received ineffective assistance of trial counsel. We disagree.

{¶37} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶38} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶39} Appellant first argues defense trial counsel was ineffective in withdrawing the motion to suppress and/or in failing to renew the motion to suppress after substitute counsel became involved.  We disagree.  A failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. *State v. Umstead*, 5th Dist. Holmes No. 16 CA 004, __N.E.3d__, 2017-Ohio-698, ¶ 40, citing *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, 2015 WL 5917918, ¶ 39 and *State v. Robinson,* 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3rd Dist.1996).

{¶40} As we observed in our discussion of appellant's first assignment of error, it is not possible to determine from a trial record whether a suppression motion would have been successful.  Furthermore, we must presume a properly licensed attorney executes his or her duties in an ethical and competent manner. See *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Under the circumstances presented, we are not inclined to overcome this presumption with the limited information in the appellate record before us.

{¶41} Appellant further argues defense trial counsel was ineffective because he was silent "during crucial testimony."  Specifically, appellant cites debate between the prosecutor, trooper, and trial court as to when or if appellant denied he had a prior O.V.I. conviction during the traffic stop.  Appellant infers his credibility was impugned and defense counsel should have objected, although he fails to provide the basis for such an objection.  The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.  *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), citing *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). The

defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244.

{¶42} Even if counsel had objected to this conversation, the outcome of the trial would not have been different. Despite appellant's focus on the video quality and whether certain statements were made during the stop, the totality of the evidence against appellant is compelling. The evidence was heard by the trial court, not a jury, and the judge was able to evaluate the video and the witnesses' credibility.

{¶43} Appellant has not established that but for any alleged error of trial counsel, he would not have been found guilty of O.V.I. Appellant thus has not established ineffective assistance of counsel and his fourth assignment of error is overruled.

## CONCLUSION

{¶44} Appellant's four assignments of error are overruled and the judgment of the Massillon Municipal Court is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Wise, Earle, J., concur.