[Cite as *State v. Grimes*, 2021-Ohio-799.]

COURT OF APPEALS RICHLAND
COUNTY, OHIO FIFTH
APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Earle E. Wise, J. |
| -vs- | : | | |
| | | : | |
| KENNETH E. GRIMES | : | | Case No. 2020 CA 0033 |
| | | : | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:                Appeal from the Richland County Court
                                                                  of Common Pleas, Case No. 2019-CR-
                                                                  0519

JUDGMENT:                                              Affirmed

DATE OF JUDGMENT:                              March 15, 2021

APPEARANCES:

For Plaintiff-Appellee                                  For Defendant-Appellant

GARY BISHOP                                          JOHN C. O'DONNELL, III
Prosecuting Attorney                                10 West Newlon Place
Richland County, Ohio                              Mansfield, Ohio 44902

By:  JOSEPH C. SNYDER
Assistant Prosecuting Attorney 38
South Park Street Mansfield, Ohio
44902

*Baldwin, J.*

{¶1} Defendant-appellant Kenneth Grimes appeals his conviction and sentence from the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 9, 2019, the Richland County Grand Jury indicted appellant on one count of aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third degree, one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a felony of the third degree, one count of operating a motor vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(e), a felony of the third degree, and one count of operating a motor vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(2)(b) and (G)(1)(d)(ii), a felony of the fourth degree. The indictment also contained two OVI specifications. At his arraignment on August 20, 2019, appellant entered a plea of not guilty to the charges.

{¶3} Thereafter, a jury trial commenced on February 25, 2020. At the trial, Officer Trey Hecht of the Mansfield Police Department testified that on June 29, 2019, he was working the night shift with Officer Richard Liptak when he responded to an address on East Main Street. He testified that Officer Liptak, at approximately 1:51 a.m., had "called out a suspicious vehicle at 926 East Main Street, so I headed that way to back him up…." Transcript at 300. He arrived approximately 4 minutes after receiving the dispatch call. When he arrived, appellant was in front of a vehicle talking to Officer Richard Liptak. Officer Hecht testified that while Officer Liptak was talking with appellant, he looked

around the car and saw a couple of baggies on the floor. He picked them up. He also saw a handkerchief underneath the driver side door with a straw, which he testified was consistent with a drug abuse instrument. He saw white residue in the straw. When he

uncovered or took the handkerchief, he found a black film container that contained two baggies of suspected methamphetamines underneath the vehicle on the driver's side. The baggies were later determined to contain 4.33 grams of methamphetamines. Officer Hecht further testified that appellant told him that he did not want to submit to a urine test because he would "piss hot", meaning that his urine was going to come back with some type of narcotic in his system. Transcript at 315. He testified that appellant's eyes were dilated and appellant was sweating on a cool night.

{¶4} Officer Hecht testified that appellant said that he had thrown a "roach", commonly known as marijuana, and his phone. He found the roach and the phone by the handkerchief that was covering the straw. He testified that this was right by the driver side door. Appellant, he testified, admitted to throwing things in that area. Officer Hecht testified that appellant admitted to having methamphetamines, admitted to having a roach and admitted to drinking earlier in the evening.

{¶5} Officer Hecht testified that Billy Yeager, appellant's passenger, was very intoxicated and that Officer Liptak removed an open container from his hand. Yeager, he testified, smelled strongly of alcohol and could barely stand.

{¶6} Appellant told Officer Hecht that there might be some residue in the center console of the vehicle. He testified that appellant said that he was just driving some guys around and that he had used methamphetamines about 3 1/2 hours ago. He testified that appellant was "sweating like a fool" which is "what happens when you use methamphetamine." Transcript at 329. Appellant admitted that he went to Galion, dropped off some videos, came through Crestline and was going back to the City of Mansfield.

{¶7} Officer Richard Liptak of the Crestline Police Department testified that on June 29, 2019, he was sitting in the parking lot of a Dollar General at the corner of County Line Road and Main Street in the Village of Crestline at approximately 1:47 a.m. He testified

that he had been sitting there for about twenty minutes watching the apartments across the street where he suspected drug activity when he observed an SUV pass him, pull into a parking lot at a known drug house that Liptak was watching and pull to the front of the apartment building at 926 East Main. Billy Yeager lived at 926 East Main. Liptak testified that he watched the SUV pull in and pulled up closer across the street and watched the vehicle for a couple of minutes with his lights off. He observed the two subjects exit the vehicle.

{¶8} Officer Liptak testified that he observed the driver of the vehicle open the back passenger door, then the rear of the car and then start throwing things onto the ground. He testified that he thought that this was "a little suspicious." Transcript at 402. Because of the strange behavior in opening up the doors and the back and throwing things onto the ground in the middle of the night in a high profile drug area, he called dispatch to report a suspicious vehicle and a suspicious person or people.

{¶9} Officer Liptak was subsequently able to identify the driver as appellant and make contact with appellant. He also made contact with Bill Yeager who claimed that he had not been in the vehicle but rather came out of his house. Officer Liptak testified that he saw Yeager exit the vehicle and suspected that he was a passenger in the vehicle. Appellant's girlfriend was the registered owner of the vehicle. Officer Liptak testified that

he observed a beer can on the floor of the vehicle. He then asked both men for their driver's license. Appellant told him that he did not have one and turned over his prison ID. He told the Officer that his girlfriend had just dropped him off. Officer Liptak told appellant that no one else was in the vehicle and that he had watched appellant get out. Appellant, he testified was "sweating profusely" and when he shined a light in appellant's eyes, his eyes "were about 5 millimeters in size." Transcript at 410. Based on his training, he knew that this was indicative of someone under the influence of a stimulant. Officer Liptak testified that

when he made contact with appellant, he asked what appellant was doing throwing stuff out of the vehicle. Appellant, he testified, told him that he was at a storage unit and was getting ready to put stuff into a storage unit. There was no storage unit nearby. Appellant "looked dazed and confused like he didn't understand" what the Officer was talking about. Transcript at 412. Officer Liptak testified that this showed that appellant was impaired.

{¶10} Appellant then walked to the front of the vehicle and handed Officer Liptak his stuff. Officer Hecht then pulled up. Officer Liptak then patted appellant down and pulled baggies from appellant's pocket. The following is an excerpt from Officer Liptak's testimony:

{¶11} Q. When you pull - - when Officer Hecht pulls up and he finds the baggies on the ground and you find the baggies in the Defendant's pocket, what are your thoughts at that point.

{¶12} A. That obviously he threw those on the ground.

{¶13} Q. Did you make any observations between the baggies on the ground and the baggies in the Defendant's pocket?

{¶14} A. Yes. They all - - they all seemed to match. Some had residue in them and some were empty.

{¶15} Q. Some of the baggies that were in his pocket were empty?

{¶16} A. Yes, ma'am.

{¶17} Transcript at 414.

{¶18} Appellant refused to submit to field sobriety tests. Appellant also refused to submit to urine tests at the police station. Officer Liptak testified that they gave appellant two or three bottles of water because appellant's mouth was dry, which he testified was a sign of someone under the influence of methamphetamines, and so that appellant could fill his bladder so that he could urinate. The Officer testified that he did not obtain a search warrant because the 3 hour time window for obtaining a urine sample was close to expiration.

Officer Liptak testified that he heard appellant admit that he was under the influence of methamphetamines, alcohol and marijuana. He further testified that appellant admitted to being the operator of the motor vehicle and that when Officer Hecht arrived on the scene, the keys were in the vehicle's ignition, it was running and the lights were on.

{¶19} Appellant testified at trial that he had half of a beer and some methamphetamines at Yeager's house after he got to the place where he was arrested.

{¶20} At the conclusion of the evidence and the end of deliberations, the jury, on February 27, 2020, found appellant guilty on all counts. Counts 1 and 2 were merged and, pursuant to an Entry filed on March 2, 2020, appellant was sentenced to 24 months on Count 2. Count 2 and 4 were merged and appellant was sentenced to 24 months on Count 3. Counts 2 and 3 were ordered to be served consecutively with 5 years mandatory

on the OVI specification to be served consecutively to Counts 2 and 3, for an aggregate sentence of nine (9) years. Appellant was also fined $10,500.00.

{¶21} Appellant now appeals, raising the following assignments of error on appeal:

{¶22} "I. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶23} "II. THE TRIAL COURT ERRED IN IMPOSING A MAXIMUM SENTENCE AND FINE ON DEFENDANT/APPELLANT FOR EXERCISING HIS RIGHT TO TRIAL AND THE OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE WAS NOT THE WORST FORM OF SAID OFFENSE."

{¶24} "III. THE VERDICT OF GUILTY TO OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶25} Appellant, in his first assignment of error, argues that he received ineffective assistance of trial counsel because his counsel did not file a Motion to Suppress.

{¶26} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley* , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; *i.e.*, whether counsel's performance fell below an objective

standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267.

{¶27} "To demonstrate ineffective assistance for failing to file a motion to suppress, a defendant must show: (1) a basis for the motion to suppress; (2) that the motion had a reasonable probability of success; and (3) a reasonable probability that suppression of the challenged evidence would have changed the outcome at trial." *State v. Phelps*, 5th Dist. Delaware No. 18 CAA 02 0016, 18 CAA 02 0017,2018-Ohio-4738, ¶ 13 quoting *State v. Clark*, 6th Dist. Williams No. WM-09-009, 2010-Ohio-2383, ¶ 21. *Accord State v. Abass*, 5th Dist. Stark No. 2016CA00200, 2017-Ohio-7034, ¶¶ 39-40 (A failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based

on the record, the motion would have been granted).

**{¶28}** In the case sub judice, appellant argues that the search of his person and vehicle was contrary to law. To conduct a constitutionally valid investigatory stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual has committed, is committing or is about to commit a crime. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). The propriety of an investigation stop by a

police officer must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

**{¶29}** Officer Liptak testified that he was watching an apartment for drug activity and that after appellant's vehicle pulled up, he pulled up closer and sat for a minute and watched the vehicle. He observed two individuals exit the vehicle after a couple of minutes  and then observed the driver open the back passenger door and then the rear of the car  and start throwing things outside on the ground. He testified that he thought that this was  suspicious and that  he then made contact  with appellant, the driver. Officer Liptak  testified that "[i]t just isn't a normal routine to see somebody doing that in the middle of  the night. Again, that is a high profile drug area." Transcript at 403.

**{¶30}** Officer Liptak then drove over to make contact with the driver of the vehicle who was later determined to be appellant. At this point, the encounter was consensual. "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60(1995), citing *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's

liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Id.* at 747-748, 667 N.E.2d 60.

{¶31} Officer Liptak testified that appellant was "sweating profusely" and his eyes were dilated, which was typical of someone under the influence of a stimulant. Transcript at 410. When he walked up to the vehicle, appellant was standing outside his car door.

Appellant appeared to be confused. In plain view on the ground, Officer Liptak saw the items that appellant had thrown right outside the driver's door. He saw baggies, a straw, a handkerchief, and appellant's phone. When asked appellant why he was throwing items out, appellant indicated that he was at a storage unit and was putting items into a unit . There was no storage unit nearby.

{¶32} We find that, after this encounter, Officer Liptak had reasonable articulable suspicion that appellant had committed, was committing, or was about to commit a crime.

{¶33} Officer Liptak then patted appellant down and pulled baggies out of appellant's pockets that seemed to match the baggies on the ground. Some had residue in them while others were empty. When Officer Hecht arrived on the scene, he picked up the baggies and the straw and a handkerchief from underneath the driver's side door. He saw white residue inside the straw. He found a black film container when he picked up the handkerchief. When he opened up the black film container, he found two baggies of suspected methamphetamines. Appellant refused to submit to a urine test, stating that his urine would come back positive for methamphetamines. Officer Hecht testified that appellant admitted to marijuana and alcohol and Officer Liptak testified that appellant admitted that he was under the influence of methamphetamines, alcohol and marijuana.

{¶34} Based on the foregoing, we find that trial counsel was not ineffective in failing to file a Motion to Suppress. Any motion did not have a reasonable probability of

success.

**{¶35}** Appellant's first assignment of error is, therefore, overruled.

II

**{¶36}** Appellant, in his second assignment of error, contends that the trial court erred in imposing a maximum sentence and fine on appellant for exercising his right to trial and that the operating a motor vehicle while under the influence was not the worst form of such offense.

**{¶37}** It is well-established "a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶8, citing *State v. O'Dell,* 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989). When reviewing a sentence for vindictiveness, we begin by presuming the trial court considered the proper sentencing criteria. *Id.* at ¶ 19. We then review the record for evidence of actual vindictiveness. *Id.* "We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court." *Id.*, citing R.C. 2953.08(G)(2) and *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶1. It is incumbent upon the defendant to prove actual vindictiveness. *Id.* at ¶ 18, citing *United States v. Wasman*, 468 U.S. 559, 569, 104 S.Ct.

3217, 82 L.Ed.2d 424 (1984).

**{¶38}** We have reviewed the entire record - the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing – and find no evidence of actual vindictiveness on the part of the trial court. The trial court's comments were the trial court's observations.

**{¶39}** We review felony sentences using the standard of review set forth in R.C. 2953.08(G)(2), which provides in pertinent part:

{¶40} (2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶41} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶42} (a)That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶43} (b)That the sentence is otherwise contrary to law (emphasis added).

{¶44} A trial court's imposition of a maximum prison term is not contrary to law as long as the court sentences the offender within the statutory range for the offense, and in so doing, considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12. *State v. Kinser*, 5th Dist. Muskingum No. CT2019-0089, 2020-Ohio-3881, ¶ 10, *citing State v. Santos,* 8th Dist. Cuyahoga No. 103964, 2016-Ohio-5845, ¶ 12. Although a trial court must consider the factors in R.C. 2929.11 and 2929.12, there is no requirement the court state its reasons for imposing a maximum sentence, or for imposing a particular sentence within the statutory range. *Id.* R.C. 2929.12 does not require the trial court to state on the record it has considered the statutory criteria concerning seriousness and recidivism. *State v. Hayes*, 5th Dist. Knox No. 18CA10, 2019-Ohio-1629, ¶49.

{¶45} We find that appellant's maximum sentence for operating a motor vehicle while under the influence was supported by the record. The trial court, in sentencing

appellant, noted that it was appellant's fifth felony OVI conviction in the last twenty (20) years and that there "[s]hould have been the sixth; however, the very first one you got was reduced to an unclassified misdemeanor." Transcript at 619. It further noted that appellant had a total of fourteen (14) OVI convictions and "a slew of other felony convictions" and that appellant was not remorseful. Transcript at 619. The trial court found that appellant posed a danger to society.

{¶46} Because appellant's sentence was within the statutory range and the trial court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12, we find that the trial court did not err in imposing the maximum sentence on appellant.

{¶47} Appellant's second assignment of error is, therefore, overruled.

III

{¶48} Appellant, in his third assignment of error, contends that his conviction for operating a motor vehicle while under the influence was against the manifest weight of the evidence.

{¶49} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-

52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶50}** As is stated above, Officer Liptak testified that he observed appellant drive down East Main Street and into the parking area in front of Billy Yeager's house, get out and start throwing things out of his vehicle. When he made contact with appellant, appellant was sweating profusely and his eyes were dilated. Officer Liptak testified that this led him to believe that appellant was under the influence of a stimulant. There was testimony that methamphetamine raises your body temperature. Appellant told the Officer that he was at a storage unit and was getting ready to put the stuff into the unit. There was no storage unit nearby. Appellant, according to Officer Liptak, looked dazed and confused and appeared to not know what was going on.

**{¶51}** Appellant refused to submit to a urine test and indicated that he would "piss hot." Transcript at 315. Appellant told the Officers that he had taken methamphetamines that day. When Officer Hecht arrived, the keys were in the ignition and the vehicle was running. Officer Liptak testified that appellant admitted that he was under the influence of methamphetamines, alcohol and marijuana. He further testified that appellant admitted to being the operator of the motor vehicle.

**{¶52}** Based on the foregoing, we find that the jury did not lose its way in convicting appellant of operating a motor vehicle while under the influence.

**{¶53}** Appellant's third assignment of error is, therefore, overruled.

**{¶54}** Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, P. J.

Hoffman, J., and

Wise, Earle, J. concur.