[Cite as *State v. Grove*, 2020-Ohio-1123.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| PAUL GROVE, JR. | : | Case No. 2019 AP 08 0024 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
                              Court of Common Pleas, Case No.
                              2017 CR 09 0204

JUDGMENT:                     Affirmed

DATE OF JUDGMENT:             March 25, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

AMANDA K. MILLER                          DONAVON HILL
Assistant Prosecuting Attorney            116 Cleveland Avenue North
Tuscarawas County                         Canton, Ohio 44702
125 East High Ave
New Philadelphia, Ohio 44663

*Baldwin, J.*

{¶1} Paul Grove appeals his conviction and sentence for: Aggravated Vehicular Homicide, a violation of R.C. 2903.06(A)(1), a felony of the second degree; two counts of Aggravated Vehicular Assault, violations of R.C. 2903.08 (A)(1)(a), felonies of the third degree; Operating a Vehicle Under the Influence of Alcohol a Drug of Abuse or a Combination of them, a violation of R.C. 4511.19(A)(1)(d), and Operating a Vehicle Under the Influence of Alcohol a Drug of Abuse or a Combination of them, a violation of R.C. 4511.19(A)(1)(a), misdemeanors of the first degree.   Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2} Grove was driving home from a graduation party when he lost control of his vehicle and collided with two motorcycles.  A motorcycle passenger was killed and the two drivers were seriously wounded.  Grove appeals his conviction contending that the trial court imposed an illegal sentence, allowed inflammatory depictions of gruesome injuries, that his conviction was against the manifest weight of the evidence and that he was denied effective assistance of trial counsel.

{¶3} Paul Grove attended a graduation party for a family member and left for home in his Chevrolet Trailblazer.  At about 6:00 P.M. he was unable to negotiate a turn and the right wheels of his vehicle went off the pavement, onto the berm and into a graveled area.  Grove overcorrected and lost control of his vehicle as it skidded on the pavement and presented its passenger side to oncoming traffic in the opposite lane.  The Trailblazer and two motorcycles collided. The first motorcycle collided with the Trailblazer at its front passenger side and as a result of the impact, the passenger on the motorcycle

was ejected, the gas tank was ruptured and the driver was engulfed in flames. He was unable to escape the flames due to other injuries caused by the impact.

{¶4} After the first collision, the Trailblazer's counter-clockwise spin accelerated and it struck the second motorcycle with its right rear section, throwing the motorcycle and the driver to the ground. The driver of the second motorcycle was conscious and attempted to help the driver of the first motorcycle and the passenger. He called for emergency services, but handed the phone to Grove as his injuries prevented him from completing the call.

{¶5} The Ohio State Highway Patrol began an investigation of the accident shortly after it occurred. Trooper Clapper arrived after the emergency medical services and spoke with Grove. The trooper noticed that appellant had the smell of an alcoholic beverage coming from his person, his speech was slurred and his eyes were bloodshot and glassy. The trooper put the appellant in his patrol car and read his Miranda Rights to him, and appellant indicated he understood.

{¶6} The trooper asked appellant to write a statement and he agreed to do so. In the statement, appellant explained that he was at a graduation party at a family member's home where he drank four beers, starting at one or two o'clock with the last beer consumed about one half hour before giving the statement. He was heading home when he came around a turn at about forty to forty-five miles per hour, hit some pea gravel and lost control.

{¶7} Trooper Clapper then asked appellant to step out of the car to perform field sobriety tests. The trooper completed the gaze nystagmus test and was giving appellant instructions to perform the walk and turn test when appellant lost his balance and told the

trooper he would not perform any more tests. The trooper arrested appellant for OVI and provided him a copy of BMV Form 2255 which appellant signed. The trooper tested a sample of his breath and the results were over the legal limit, indicating impairment.

{¶8}   The trooper requested a second statement from appellant and within this statement Grove disclosed that he began drinking before he arrived at the party.  He had "a couple" before the party and four more drinks at the party. The trooper then released appellant into the custody of his mother and forwarded the investigatory file to the Tuscarawas County Prosecutor's Office.

{¶9}   Trooper Larry Gaskill investigated the accident in his role as an accident reconstructionist and provided his opinion regarding the speed of the vehicles and the cause of the collision.

{¶10}  The trooper used two methods to calculate the speed of the vehicle at different times during the crash.  He used his observations at the scene, including the markings on the road, to determine the speed of the Trailblazer just before impact was between sixty to sixty-six miles per hour. He used data from the air bag control module in the Trailblazer to determine that the speed of the vehicle at the moment Grove began reacting to the impending crash was eighty miles per hour and he found that speed consistent with his calculation of the speed just prior to impact. His analysis confirmed that appellant's tires dropped off the side of the road and, as he attempted to come back onto the road, he lost control, rotated counter-clockwise and was broadside as he entered the path of the motorcycles.  The first motorcycle impact increased the rate of rotation just before the second impact.  He concluded that the appellant's high rate of speed, in excess of the speed limit for that road, resulted in the loss of control and crash.

{¶11} Trooper Jeremy Grubb took several photographs of the accident scene and the vehicles.  While photographing the interior of the Trailblazer, he discovered a thirty-pack of beer, an open, cold, partially empty can of beer in an insulated holder as well as two empty beer cans.

{¶12} The Chief Medical Examiner for Summit County examined the body of the passenger who was thrown from the motorcycle and confirmed that the blunt force trauma from the crash caused her death.

{¶13} The drivers of the motorcycles suffered multiple injuries as a result of the crash. One was burned over thirty-three percent of his body, suffered forty-two bone fractures and spent three months in the hospital where he underwent several skin grafts. The burn scars are still evident and will require constant care and his mobility is restricted. The other driver suffered bruises, contusion and lacerations as well as fractures to his foot.  The fractures required several surgical repairs and have resulted in a permanent restriction in his movement.

{¶14} The Tuscarawas County Grand Jury indicted Grove on one count of Aggravated Vehicular Homicide, in violation of R.C. 2903.06(A)(1)(a), two counts of Aggravated Vehicular Assault, in violation of R.C. 2903.08(A)(1)(a), one count of Operating a Motor Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them, in violation of R.C. 4511.19(A)(1)(d), one count of Operating a Motor Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them, in violation of R.C. 4511.19(A)(1)(a), one count of Operating a Motor Vehicle or Agricultural Tractor Without Being in Control of it, in violation of R.C. 4511.202(B), one count of Violation of Lanes of Travel on Roadways, in violation of R.C. 4511.33 (A) and/or

(B), and one count of Violation of Speed Limits, in violation of R.C, 4511.21 (D)(1). The matter proceeded to hearing on August 13, 2018 where Grove pled guilty to all counts and was sentenced to eighteen years in prison.

{¶15} Grove appealed his conviction and we vacated his sentence because the trial court did not inform Grove before accepting his guilty plea that Aggravated Vehicular Homicide under R.C. 2903.06 required the trial court to impose a mandatory prison sentence. *State v. Grove*, 5th Dist. Tuscarawas No. 2018AP100033, 2019-Ohio-1627, ¶ 2. The case was remanded to the trial court and the matter was scheduled for a jury trial. Prior to the commencement of the trial, the state dismissed the charges of Operating a Motor Vehicle or Agricultural Tractor Without Being in Control of it, in violation of R.C. 4511.202(B), Violation of Lanes of Travel on Roadways, in violation of R.C. 4511.33 (A) and/or (B), and Violation of Speed Limits, in violation of R.C, 4511.21 (D)(1). The jury returned a verdict of guilty on all remaining counts and appellant was sentenced to an aggregate term of eighteen years.

{¶16} Grove appealed and submitted four assignments of error.

{¶17} "I. APPELLANT'S SENTENCE WAS CONTRARY TO LAW."

{¶18} "II. THE TRIAL COURT ERRED IN PERMITTING INFLAMMATORY IN-COURT DEPICTIONS OF GRUESOME INJURIES."

{¶19} "III. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} "IV. APPELLANT WAS DENIED DUE PROCESS DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."

**ANALYSIS**

**{¶21}** Appellant opens his argument regarding the first assignment of error by incorrectly describing the applicable law and shifting the burden of proof. He contends that this court "may either increase, reduce, modify, or vacate a sentence and remand for resentencing where record does not support, by clear and convincing evidence, the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law." (Appellant's Brief p. 3). That description is incorrect. The language of the relevant code section prohibits this court from altering a sentence unless we find clear and convincing evidence the record does not support the trial court's sentencing. The cases cited by Appellant support our interpretation. "That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23 (2016). "On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court "to review the record, including the findings underlying the sentence" and to modify or vacate the sentence "if it *218 clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code." *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 28.

**{¶22}** Appellant would have us review the record for clear and convincing evidence in support of the sentence, when the statute and the precedent limits our

authority to amend the sentence to circumstances where we find clear and convincing evidence that the record does not support the sentence.

{¶23} Appellant concludes his argument contending that the trial court had predetermined the sentence and that it failed to consider any mitigating evidence, particularly that the Appellant accepted responsibility for his behavior. We have reviewed the record and do not find clear and convincing evidence that the record does not support the trial court's findings.  We did find that contrary to appellant's assertions, the trial court did consider mitigation when it found that:

8. The offender had been law-abiding for eight years prior to the offenses;

9. The offender was compliant with pretrial release supervision, and used the time to work on treatment for his substance abuse disorder after the positive drug screen in October, 2017; and

10. The offender expresses genuine remorse.

Judgment Entry on Sentencing, July 23, 2019, P. 3, Docket #213.

{¶24} Because we find that appellant's only objection to the sentence, lack of consideration of mitigating circumstances, is contained within the record, and that there is not clear and convincing evidence that the record does not support the sentencing court's findings, the first assignment of error is overruled.

{¶25} In his second assignment of error, appellant contends that the trial court's analysis leading to the ruling allowing the victim to display his injuries to the jury was incomplete as it failed to weigh the probative value against the prejudicial and inflammatory nature of the "disrobing."  Appellant asserts "The shocking and gruesome nature of the wounds would inflame and upset the jury."  Appellant refers to the revelation

by the victim as "disrobing," "prejudicial," "shocking," "gruesome," "inflammatory," and "upsetting." Despite the conclusory descriptions in Appellant's brief, the record contains no description of what was revealed to the jury or how it was revealed. "The record is devoid of any description of this display" and "[w]e do not have a clear picture of what the jury saw." *State v. Martin,* 1st Dist. Hamilton No. C-790494, 1980 WL 352989, *1.

**{¶26}** Under Evidence Rules 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. Under Evidence Rule 403(A), the probative value of the evidence must be weighed against the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 611(A) further provides, in relevant part, the trial court "shall exercise reasonable control over the mode and order of ... presenting evidence so as ... to make the ... presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time." "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." *State v. Woodards* (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568. "The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." *Id.*

**{¶27}** The victim testified as to the treatment of his burns after the injury and the need for continued care, but did not describe his scars. Appellee asked if he suffered any permanent disfigurement and appellant objected after which the following argument took place outside the hearing of the jury:

MS. SPIES: Objection. Can we go into chambers? (Whereupon, sidebar was held as follows:)

MS. SPIES: Just putting on a show for the jury. This is more, this is irrelevant. This is not probative at all.

MS. MILLER: An element of aggravated vehicular assault for the injuries sustained by Mr. Indermill is serious physical harm and the definition of serious physical harm is a permanent physical disfigurement. And according to the best evidence rule, that's the best evidence.

MS. SPIES: He's just putting on a show. This is putting on a show for the jury. This isn't proving anything. He has serious physical injuries. He's already testified to that. We know how long he was in the burn unit, we know he has to put lotion on, and we know this, we know that. For him to unbutton his shirt and show the jury is ridiculous. It doesn't prove anything. We know he has serious physical harm.

MS. MILLER: So you're stipulating? You're stipulating to that, the State has met that evidence?

MS. SPIES: No, no I am not stipulating anything. But what I'm saying is you're putting on a show -

THE COURT: You have to keep your voice down.

MS. SPIES: Sorry.

THE COURT: The jury can hear.

MS. SPIES: You're putting on a show for the jury and it's not necessary.

THE COURT: I've prepared the jury instructions. The definitions that are required, I think it is probative and the motion is overruled.

MS. SPIES: Come on Judge.

THE COURT: The objection is overruled.

Trial transcript, pp. 276-277.

**{¶28}** After the ruling, "[t]he Witness showed his injuries to the jury." We cannot determine from this record what the jury observed or how the "injuries" were displayed or the nature of the "injuries."

**{¶29}** Trial counsel did not argue that the wound was gruesome, shocking or inflammatory at trial, but only that the victim and appellee were "putting on a show" and that it "doesn't prove anything." Appellant objected to the relevancy of the view and did not contend that the view would be more prejudicial than probative. The court properly responded to the objection made and determined that the view was probative. Appellant failed to raise the issue of the alleged prejudicial nature of the view before the trial court and that failure operates as a waiver of Appellant's right to assert such for the first time on appeal. *Hadley v. Figley*, 5th Dist. No. 15-COA-001, 2015-Ohio-4600, 46 N.E.3d 1129, ¶ 22.

**{¶30}** Even if would interpret the objection as directed toward the alleged prejudice that would result, Appellant did not make a complete record of what was disclosed to the jury, so we would be compelled to conclude that the trial court exercised its discretion appropriately.

**{¶31}** For the forgoing reasons, we find appellant's second assignment of error lacks support in the record. He did not assert that the view of the victims scars would be more prejudicial than probative, so he as waived that issue. Even if he had preserved the issue, the record lacks any description of the view that we could review.

**{¶32}** Appellant's second assignment of error is overruled.

**{¶33}** Appellant's argument in his third assignment of error is very difficult to discern from the text of the brief. He cites several cases describing review of allegations that a conviction was against the manifest weight and sufficiency of the evidence, reproduces the text of the Revised Code Sections that were contained in the indictment and notes that three of the charges were dismissed and therefor those charges were not proven. He then states " [a]s they were not proven, the State must present evidence to infer that Appellant caused the death and injury involved in the statutes." Appellant's Brief, p. 8. He concludes by stating "the State's witnesses were not wearing helmets or protective gear of any kind (TR at 278) and that the State's police witnesses indicated that the motorcycle riders could have slowed down or in some other way mitigated the accident, but did not. (TR at 165)." Appellant's Brief, p. 8.

**{¶34}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence

admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶35}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra,* 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id. *State v. Schoeneman*, 5th Dist. Stark No. 2017CA00049, 2017-Ohio-7472, ¶¶ 21-23.

**{¶36}** While the record does show that the victims were not wearing helmets and one of the investigating officers did agree that it is possible that the victims may have been able to slow, there is sufficient evidence in the record to support the jury's finding of guilt. The testimony of the investigating officers provided competent evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that appellant was driving at a high rate of speed, lost control of his vehicle which resulted in the death and serious physical harm to the motorcycle riders on the road. The record contains sufficient evidence for a reasonable juror to conclude, beyond a reasonable doubt, that appellant

had consumed alcohol at a time and in sufficient quantity that his ability to drive at the time of the crash was impaired in violation of R.C. 4511.19.

{¶37} After reviewing the record in a light most favorable to the prosecution, we hold that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt and, after weighing the evidence and all reasonable inferences, considering the credibility of witnesses and resolving conflicts in the evidence, we hold this is not a case where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.

{¶38} Appellant's third assignment of error is overruled.

{¶39} In appellant's fourth assignment of error, he claims that he received ineffective assistance of counsel because trial counsel failed to file a motion to suppress the results of the OVI testing. Noticeably absent in appellant's argument is the assertion that, had the motion been filed, it would have had a reasonable probability of changing the outcome of the trial. Appellant neglects to describe how or why such a motion would have been successful and relies only upon the assertion that failure to file the motion was prejudicial.

{¶40} "To demonstrate ineffective assistance for failing to file a motion to suppress, a defendant must show: (1) a basis for the motion to suppress; (2) that the motion had a reasonable probability of success; and (3) a reasonable probability that suppression of the challenged evidence would have changed the outcome at trial." *State v. Phelps*, 5th Dist. Delaware No. 18 CAA 02 0016, 2018-Ohio-4738, ¶ 13 quoting *State v. Clark*, 6th Dist. Williams No. WM-09-009, 2010-Ohio-2383, ¶ 21. *Accord State v.*

*Abass,* 5th Dist. Stark No. 2016CA00200, 2017-Ohio-7034, ¶¶ 39-40 (A failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted).

**{¶41}** Appellant's argument is not that the motion would have been successful if filed and that there was a reasonable probability that the outcome of the trial would have been different had the motion been filed, but only that trial counsel was ineffective for failing to file the motion. Appellant is inviting us to conclude that failure to file a motion to suppress is ineffective assistance of counsel without exploring the likely success or probable consequences of the filing of the motion. He submits that because the aggravated vehicular homicide and aggravated vehicular assault charges are "inextricably linked" to the OVI, we should disregard our holding that failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Cline*, 5th Dist. Licking No. 09 CA 52, 2009-Ohio-6208, ¶ 19. Aside from this conclusory statement, Appellant provided no authority or argument justifying a change in our position in *Cline* and we reject his suggestion that the holding should be modified for this case.

**{¶42}** Appellant's fourth assignment of error is overruled because there is neither evidence nor argument that a motion to suppress had a reasonable likelihood of success.

**{¶43}** The decision of the Tuscarawas County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.