[Cite as *State v. Stevenson*, 2025-Ohio-4431.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2024 CA 00183 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Stark County, Case No. 2024 CR 1209 |
| SHAMAR MALCOM JAMEL STEVENSON, | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment: September 18, 2025 |

BEFORE: Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

APPEARANCES: Christopher A. Piekarski, for Plaintiff-Appellee; Donovan R. Hill, for Defendant-Appellant.

*Gormley, J.*

**{¶1}** Defendant Shamar Stevenson argues in this appeal that the trial court should have granted his motion to suppress. In that motion, Stevenson questioned the validity of a traffic stop that led to the discovery of a firearm and methamphetamine in his vehicle. Stevenson argues that the traffic stop — which a police officer initiated when Stevenson, while driving, failed to come to a full stop behind a painted stop bar at an intersection — was improper. The trial court found that the traffic stop was justified under R.C. 4511.43(A). We agree, and we therefore affirm the trial court's judgment.

**The Key Facts**

**{¶2}** The facts below are drawn from a transcript of a suppression hearing held in the trial court. Officer J' Tahn Hampton from the City of Canton Police Department testified at that hearing.

{¶3}   In May of 2024, Officer Hampton, while driving a marked cruiser, saw a vehicle approach a stop sign and roll past the painted stop bar at that intersection. Stevenson was the driver of that vehicle, and by the time he came to a full stop at the intersection, his vehicle's rear tires had passed the stop bar.  Hampton initiated a traffic stop.

{¶4}   During a subsequent roadside vehicle search — which is not contested in this appeal — police officers found items that led to the filing of weapon and drug charges against Stevenson.

{¶5}   Before his trial date on those charges, Stevenson filed a motion to suppress. After holding a hearing, the trial court denied Stevenson's motion.   Stevenson then entered a no-contest plea to the firearm and drug charges, and he was sentenced to prison.

**The Traffic Stop Was Proper**

{¶6}   In his sole assignment of error, Stevenson argues that his motion to suppress should have been granted because, he says, his alleged failure to stop his vehicle at the stop bar did not provide a valid reason for a traffic stop.  Stevenson also argues that the traffic stop was improper because he believes that the officer who effected the stop suspected him of committing other crimes and perhaps stopped Stevenson's vehicle at least in part with an eye toward investigating his possible role in those other crimes.

{¶7}   "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  When a trial court considers a motion to suppress, it "assumes the role of trier of fact and is therefore in the best position to

resolve factual questions and evaluate the credibility of witnesses." *Id*. As a reviewing court, we must accept as true the trial court's factual findings if they are supported by competent, credible evidence, and we must "then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

**{¶8}** A traffic stop constitutes a seizure within the meaning of the Fourth Amendment to the U.S. Constitution, and any seizure must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809-810 (1996). "'[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid.'" *State v. Bennett*, 2011-Ohio-4527, ¶ 22 (5th Dist.), quoting *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996).

**{¶9}** This Court has consistently held that a stop-bar violation can justify a traffic stop. In relevant part, R.C. 4511.43(A) provides that, "every driver of a vehicle . . . approaching a stop sign shall stop at a clearly marked stop line." In *State v. Braucher*, we affirmed a traffic stop where the trial court found that "approximately half of the vehicle [wa]s past the stop bar prior to the car coming to a stop." *State v. Braucher*, 2024-Ohio-811, ¶ 31 (5th Dist.). Similarly, in *State v. Goss*, we upheld the constitutionality of a traffic stop where the officer observed the appellant's pickup truck with "the engine compartment . . . beyond the stop line and the rear wheels of his vehicle behind it, such that appellant's 'driver's door was on top of the stop bar.'" *State v. Goss*, 2017-Ohio-161, ¶ 2 (5th Dist.). In each case, we concluded that a driver's failure to stop before crossing a stop bar at an intersection regulated by a stop sign provided sufficient justification for a traffic stop.

**{¶10}** Our holdings in *Braucher* and *Goss* align with the approach adopted by other Ohio appellate courts. The Third District in *State v. Miller* explained that the statute requires "a motorist to stop prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of the clearly marked stop line." *State v. Miller*, 2015-Ohio-3529, ¶ 22 (3d Dist.). The Fourth District has echoed that view, concluding that "the statutory requirement to stop 'at a clearly marked stop line' requires a driver to come to a complete stop *before* the vehicle comes into contact with the stop line." (Emphasis in original.) *State v. Levine*, 2019-Ohio-265, ¶ 23 (4th Dist.). In short, Ohio courts agree: R.C. 4511.43(A) requires any driver approaching a stop sign at an intersection to stop before any portion of the vehicle passes the painted stop bar, if any, in the driver's lane of travel. And any violation of that stop-bar requirement can justify a traffic stop by a law-enforcement officer.

**{¶11}** Applying these established principles to the facts before us, we find that Officer Hampton, based on his observations, possessed the necessary reasonable and articulable suspicion for the traffic stop. Hampton testified that he observed Stevenson's vehicle approach the stop sign and "stop beyond the stop bar." In fact, Hampton explained, the vehicle's rear tires had crossed over the stop bar by the time the vehicle came to a stop at the intersection. As we said in *Braucher* and *Goss*, a stop-bar violation can justify a traffic stop. Hampton saw Stevenson violate R.C. 4511.43(A), so the traffic stop that followed was a proper one.

**{¶12}** To be sure, Stevenson contends that a stop-bar violation alone is insufficient to justify a traffic stop, and he points to cases where those violations were coupled with other traffic offenses that prompted officers to stop vehicles. Under Ohio

law, though, any traffic violation, no matter how minor, provides sufficient justification for a traffic stop. *Erickson*, 76 Ohio St.3d at 12; *State v. Kay*, 2022-Ohio-3538, ¶ 17 (5th Dist.) ("[t]raffic stops based upon observation of a traffic violation are constitutionally permissible"). The fact that some traffic stops involve multiple violations does not mean that all stops must do so. A driver's stop-bar violation under R.C. 4511.43(A) is itself a sufficient basis for a traffic stop, whether that driver commits additional violations or not.

{¶13} Stevenson argues, too, that his alleged stop-bar violation was not the true reason for the traffic stop. Police officers in the area were concerned about violent crime and criminal gangs, and Stevenson suggests that the traffic stop of his vehicle was part of an overzealous law-enforcement crackdown on certain drivers and particular vehicles.

{¶14} That allegation by Stevenson does not alter our view that the traffic stop was a proper one. Nearly 30 years ago, the Supreme Court of Ohio explained that where a police officer stops a vehicle after observing its driver commit an apparent traffic violation, the stop does not violate the Fourth Amendment, even if the officer "had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Erickson* at 11. The Supreme Court emphasized that this rule applies equally to minor traffic violations, and our Court has echoed that view. *Id*. at 12; *Bennett*, 2011-Ohio-4527, at ¶ 22 (5th Dist.).

{¶15} The timing of the stop and any potential ulterior motives are irrelevant to the constitutional analysis when, as here, the officer observed an actual traffic violation. Hampton's personal observation of Stevenson's stop-bar violation provided ample justification for the traffic stop, regardless of any additional investigative interests Hampton may have had in mind.

**{¶16}** For the reasons explained above, the judgment of the Court of Common Pleas of Stark County is affirmed.  Costs are to be paid by Appellant Shamar Stevenson.


By: Gormley, J.;

Baldwin, P.J. and

Montgomery, J. concur.