[Cite as *State v. Goodson*, 2026-Ohio-1495.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
FAIRFIELD COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00034 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Fairfield County Municipal Court, Case No. TRC2500307 |
| TANGIE T. GOODSON, | Judgment:  Affirmed |
| Defendant - Appellant | Date of Judgment:  April 24, 2026 |

BEFORE: Robert G. Montgomery, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Andrew D. Semelsberger (Assistant City Prosecutor), Lancaster, Ohio, for Plaintiff-Appellee; James L. Dye, Pickerington, Ohio, for Defendant-Appellant.

*Gormley, J.*

**{¶1}**   Defendant Tangie Goodson argues that she was denied the effective assistance of counsel in the trial court because the lawyer who represented her there filed a tardy motion to suppress.  The trial judge denied that motion without holding a hearing, and Goodson then pled no-contest to a misdemeanor charge of operating a vehicle while under the influence of alcohol.  Because we conclude that Goodson was not harmed by any shortcomings in her trial attorney's performance, we affirm the trial court's judgment.

**The Key Facts**

**{¶2}**   Ohio State Highway Patrol trooper Jeremy Warren initiated a traffic stop of a vehicle after he saw the driver — Goodson — commit multiple traffic violations.  Once the vehicle was stopped at the roadside, Trooper Warren, while standing near the driver's-side door of the vehicle, smelled alcohol on Goodson's breath.  The trooper noted, too, that Goodson's speech was slurred and her eyes were bloodshot and glassy.  After

Goodson acknowledged that she had consumed some alcohol recently, the trooper asked Goodson to step out of the vehicle for some roadside field-sobriety tests.

{¶3} A report prepared by Trooper Warren following his roadside interaction with Goodson describes the trooper's observations during those field-sobriety tests. The trooper saw all six clues on a typical horizontal-gaze-nystagmus test and also saw some involuntary jerking of the eyes when he administered a vertical-gaze-nystagmus test to Goodson. Goodson then struggled to follow instructions and lost her balance while attempting to complete the walk-and-turn test. And when the trooper asked how much alcohol Goodson had drunk that evening, Goodson answered that she had downed "three shots." The trooper then attempted to instruct Goodson on the one-leg-stand test, but Goodson could not stand with her feet together without stumbling.

{¶4} Next, Goodson was arrested and charged with a violation of R.C. 4511.19(A)(1)(a) for operating a vehicle while she was under the influence of alcohol. Goodson was also charged under R.C. 4511.19(A)(1)(d) after the results of a breath test indicated that she had operated her vehicle with a prohibited concentration of alcohol in her system.

{¶5} Goodson retained an attorney to represent her during trial-court proceedings, and that attorney appeared with Goodson at her arraignment. More than five months later, Goodson's attorney filed a motion to suppress. Several exhibits were attached to that motion, including Trooper Warren's report and some paperwork documenting the results of Goodson's breath test on the day of the traffic stop. Provided to the trial court by Goodson's attorney, too, was a memory stick or flash drive on which video recordings of Goodson's traffic stop and her field-sobriety tests were stored.

**{¶6}** At a hearing held by the trial judge a few days later, Goodson's counsel acknowledged that he should have filed the suppression motion sooner. The attorney also conceded that more than three months had passed between the time when the State had provided the video recordings to him and the date when the attorney first watched those recordings. After considering the lengthy delay and the fact that the attorney had been on the case from the beginning, the trial court denied Goodson's suppression motion without hearing any evidence on the merits of the issues raised in it.

**{¶7}** Goodson then pled no contest to the charges, and the trial court found her guilty. The judge merged the two operating-a-vehicle-while-under-the-influence charges, and Goodson was sentenced on the R.C. 4511.19(A)(1)(a) charge. She now appeals.

## Goodson's Ineffective-Assistance Claim Falls Short on the Second of *Strickland*'s Two Prongs

**{¶8}** In her sole assignment of error, Goodson argues that her trial counsel was ineffective because the suppression motion that the attorney filed for her was tardy, and that tardiness in turn prompted the trial judge to deny the motion without holding a hearing on it.

**{¶9}** The Sixth Amendment of course provides that an accused is entitled to the assistance of counsel in a criminal case. U.S. Const., amend. VI. For us to overturn a conviction based on a claim of ineffective assistance of counsel, a defendant must first prove that his or her counsel's performance was deficient. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant is able to make that showing, then he or she must demonstrate, too, that the attorney's deficient performance harmed or prejudiced the defendant in some way. *Id.*

**{¶10}** The failure of trial counsel to file a motion to suppress does not by itself constitute ineffective assistance of counsel. *State v. Morgan*, 2019-Ohio-2785, ¶ 25 (5th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). To show that counsel was ineffective by failing to file a suppression motion, "'a defendant must show: (1) a basis for the motion to suppress; (2) that the motion had a reasonable probability of success; and (3) a reasonable probability that suppression of the challenged evidence would have changed the outcome at trial.'" *State v. Grove*, 2020-Ohio-1123, ¶ 40 (5th Dist.), quoting *State v. Phelps*, 2018-Ohio-4738, ¶ 13 (5th Dist.).

### *Goodson's Counsel Performed Deficiently*

**{¶11}** Even the State acknowledges that Goodson's trial counsel performed deficiently in this case. Under Criminal Rule 12(D), any motion to suppress must be filed within 35 days after the arraignment or at least seven days before trial (whichever is earlier). Goodson was arraigned on January 28, 2025, but the motion to suppress was not filed until July 7, 2025. We readily find that Goodson's trial counsel performed deficiently by filing the suppression motion long after the deadline.

### *Because Goodson Was Unlikely to Succeed on Some of Her Suppression-Motion Claims, and Because Success for Her on the Remaining Claims in Her Motion Would Not Have Changed the Outcome in Her Case, She Cannot Show That She Was Harmed by her Attorney's Deficient Performance*

**{¶12}** While Goodson has satisfied the first *Strickland* requirement of showing that her trial counsel was deficient, we see no reasonable probability that the key evidence against her would have been suppressed or that the outcome in her case would have been different even had the suppression motion been timely filed.

**{¶13}** The failure to file a motion to suppress constitutes ineffective assistance of counsel "only if, based on the record, the motion would have been granted." *State v.*

*Kuhn*, 2006-Ohio-4416, ¶ 11 (9th Dist.). *See also State v. Carter*, 2017-Ohio-7501, ¶ 78 (7th Dist.) ("A claim of ineffective assistance of counsel in a direct appeal must be established by the evidence in the record").

{¶14} Although Goodson's suppression motion was denied as untimely, her attorney did at least file that motion with the court. Attached to the motion or provided to the trial judge with it were the videos of Goodson's traffic stop and field-sobriety tests, the trooper's report, and the results of Goodson's breath test. Because those items are part of the appellate record, we can consider Goodson's argument that her trial attorney's poor performance caused harm to her. Without those items, we would be compelled to reject out of hand Goodson's ineffective-assistance claim. *See State v. Parkinson*, 1996 Ohio App. LEXIS 2948, *9 (5th Dist. May 20, 1996) ("Where the record is not clear or lacks sufficient evidence to determine whether a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established").

{¶15} The suppression motion filed by Goodson's trial counsel identified several reasons why, in the defense's view, the evidence against her ought to have been excluded at trial: (1) no reasonable suspicion existed for the stop of her moving vehicle, (2) no reasonable suspicion existed for the administration of field-sobriety tests, (3) the field-sobriety tests were administered in non-standardized ways, (4) no probable cause existed for Goodson's arrest, and (5) the results of the breath test were invalid because of errors in the administration of the test or because of defects in the breath-testing machine.

### The Traffic Stop Was Justified

{¶16} The dash-camera video footage from Trooper Warren's cruiser shows that, at an intersection where Goodson was required to come to a stop, the rear tires of her vehicle were on top of a painted stop bar before the vehicle's tires stopped moving as

Goodson approached the intersection. We have held numerous times that a stop-bar violation is a valid basis for a traffic stop. *See State v. Stevenson*, 2025-Ohio-4431, ¶ 12 (5th Dist.) ("A driver's stop-bar violation under R.C. 4511.43(A) is itself a sufficient basis for a traffic stop, whether that driver commits additional violations or not"); *State v. Goss*, 2017-Ohio-161, ¶ 2 (5th Dist.) (upholding the constitutionality of a traffic stop where the engine compartment of the vehicle was "beyond the stop line").

{¶17} Because Goodson's stop-bar violation alone was a sufficient basis for Trooper Warren to initiate the traffic stop, we need not address the merits of Goodson's marked-lane-violation argument. She was unlikely to succeed in her challenge to the trooper's rationale for directing her to pull to the side of the road.

### *The Request That Goodson Participate in Field-Sobriety Tests Was Reasonable*

{¶18} A law-enforcement officer must have reasonable suspicion that a driver is under the influence of drugs or alcohol before any field-sobriety tests are administered to that driver, and the officer's suspicion must be based on specific and articulable facts. *State v. Dye*, 2021-Ohio-3513, ¶ 64 (6th Dist.). Factors that may support an officer's reasonable suspicion include, but are not limited to, the time of day for the stop, any moving traffic offenses or any erratic driving that might indicate a lack of coordination, the appearance of the driver's eyes, impairments related to the driver's speech, any odor of alcohol, the driver's demeanor, and any admissions by that person about recent alcohol or drug usage. *State v. Rasheed*, 2021-Ohio-4509, ¶ 34 (6th Dist.).

{¶19} The audio-recording function on Trooper Warren's body-worn camera was apparently turned off during the trooper's roadside interaction with Goodson. The trooper's written report describing his encounter with Goodson indicates, though, that Goodson smelled of alcohol, had bloodshot and glassy eyes, had slow and slurred speech,

exhibited what the report calls "scattered" behavior, and admitted having consumed alcohol that evening. Only after smelling, seeing, and hearing those things did the trooper ask Goodson to participate in field-sobriety tests.

{¶20} In light of those factors, we see no reasonable probability that the trial court would have embraced Goodson's view that the trooper lacked the necessary reasonable suspicion to administer the field-sobriety tests.

### *Even Had the Results of the Field-Sobriety Tests Been Suppressed, a Favorable Outcome for Goodson at Any Trial Appears Unlikely*

{¶21} We of course have no testimony from Trooper Warren about his administration of the field-sobriety tests, but we at least have the benefit of his report and of the video recording that captured the trooper's hand movements as he looked for nystagmus in Goodson's eyes and as Goodson attempted to participate in the other roadside tests. What we do not have, though, are relevant pages from the so-called NHTSA manual promulgated by the National Highway Traffic Safety Administration, which the trial judge presumably would have received had a suppression hearing been held. *See State v. Slimmer*, 2023-Ohio-4756, ¶ 22 (9th Dist.) ("The State may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual") (brackets omitted); *State v. Bish*, 2010-Ohio-6604, ¶ 31 (7th Dist.) ("in cases where the suppression motion alleges specific facts about the noncompliance with field sobriety test standards, the State is required to come forward with at least some evidence of what the standards were").

{¶22} Yet even were we to assume that at a suppression hearing in this case, the State could not meet the R.C. 4511.19(D)(4)(b) "substantial compliance" standard for the

admission of any field-sobriety-testing results, we still see no reasonable probability that Goodson would have been acquitted on the charges she faced.

{¶23} The Supreme Court of Ohio has explained that "a law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests," even when the actual test results are tainted and must be excluded. *State v. Schmitt*, 2004-Ohio-37, ¶ 15. *See also City of Columbus v. Bickis*, 2010-Ohio-3208, ¶ 15 (10th Dist.) ("even if the final results of a field sobriety test must be excluded at trial because the test was not administered in accordance with standardized testing procedures, an officer may testify at trial regarding observations of the defendant made during his or her performance on the test"); *City of Zanesville v. Reaver*, 2017-Ohio-4149, ¶ 20 (5th Dist.) (an officer's observation that the defendant could not hold himself steady, lost his balance, stumbled, or could not follow simple directions "is admissible as lay evidence of intoxication even if the final results of the field sobriety tests are inadmissible at trial due to a lack of substantial compliance with accepted testing standards").

{¶24} Trooper Warren noted in his report that Goodson could not maintain her balance during the walk-and-turn instructions, and that same report indicates that Goodson could not stand with her feet together "without stumbling off balance" at the start of the one-leg-stand test. And, after the trooper saw Goodson's stop-bar violation and noted that Goodson was slurring her speech, smelled like alcohol, and had bloodshot and glassy eyes, Goodson acknowledged that she had consumed "three shots" of alcohol that evening.

{¶25} In light of those facts — which the State would not have been barred from presenting at a trial even had the results of the field-sobriety tests themselves been

suppressed — we see no reasonable probability that the suppression of the field-sobriety-test results would have changed the outcome in Goodson's case.

### *The Suppression of Any Evidence Tied to Goodson's Arrest and Her Breath Test Would Not Have Led to Her Acquittal on the Under-the-Influence Charge*

**{¶26}** Though Goodson was initially charged with two violations of R.C. 4511.19 — not only under that statute's (A)(1)(a) provision for operating her vehicle under the influence of alcohol but also under the statute's (A)(1)(d) provision for operating her vehicle with a prohibited concentration of alcohol on her breath — she was convicted only on the R.C. 4511.19(A)(1)(a) charge. The breath-test charge went away because of merger. Given that a breath-test result was not needed by the State in order for the State to win at trial on an (A)(1)(a) under-the-influence charge, and given that the facts described above in paragraph 24 would have been presented at a trial on such a charge, we see no reasonable probability that the outcome in her case would have been different had the trial judge suppressed any evidence about her post-arrest breath-test result.

**{¶27}** And of course, if admission of the breath-test result was not an outcome-determinative factor in the case, then any question about the probable cause supporting the arrest that preceded the administration of that breath test was likewise not of any consequence to Goodson's conviction on the R.C. 4511.19(A)(1)(a) charge. Even had the trial judge held a hearing on Goodson's tardy suppression motion, and even had the trial judge found some constitutional infirmity in the trooper's warrantless arrest of Goodson, that faulty arrest would not have justified dismissal of the complaint against her. *See State ex rel. Jackson v. Brigano*, 88 Ohio St.3d 180, 181 (2000) ("even if an arrest is illegal[,] it does not affect the validity of subsequent proceedings based on a valid [charging document]"); *State v. Henderson*, 51 Ohio St.3d 54, 56 (1990) ("an illegal arrest

does not invalidate a subsequent conviction which is otherwise proper"); *United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction").

***

**{¶28}** In sum, then, while we agree that Goodson's attorney performed deficiently by waiting far too long to file any motion to suppress, Goodson has not met her burden of demonstrating that she was prejudiced by her attorney's misstep. In other words, nothing in the record before us suggests that the outcome of her case would have been different had the motion to suppress been timely filed. Her assignment of error is overruled.

**{¶29}** For the reasons explained above, the judgment of the Fairfield County Municipal Court is affirmed. Costs are to be paid by Defendant Tangie Goodson.

By: Gormley, J.;

Montgomery, P.J. and

Popham, J. concur.